UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

The United States of America for the use and benefit of KIRBY BUILDING SYSTEMS, LLC,

Plaintiff,

v.                          4:12-cv-263

GATOR STEEL BUILDINGS, INC.; MACK MECHANICAL, INC.; and AMERICAN SAFETY CASUALTY INSURANCE COMPANY,

Defendants.

## ORDER

### I. INTRODUCTION

Kirby Building Systems, LLC ("Kirby") brings this action for breach of contract against Gator Steel Buildings ("Gator"), and for payment on a bond against Mack Mechanical, Inc. ("Mack") and American Safety Casualty Insurance Company ("American"). ECF No. 1. On February 13, 2013, the Clerk entered a default judgment against Gator. ECF No. 21. Kirby now moves for summary judgment against Mack and American. Because the affirmative defense of estoppel fails as a matter of law, the Court **GRANTS** summary judgment as to the breach of contract claim. However, Defendants have shown a material dispute of fact for a jury as to the reasonable amount of attorney's fees, so the Court **DENIES** summary judgment as to that limited issue.

### II. BACKGROUND[1]

Several years ago, Mack entered into a contract "to construct and erect an improvement to real property owned by the United States . . . located at the Hunter Army Airfield." ECF No. 14-1 at 2. Mack subcontracted with Gator to, among other tasks, design and supply a "metal building system for the Project." *Id.* Gator then contracted out the design and supply of the metal building to Kirby, making Kirby a sub-subcontractor to Mack. *Id.*

Kirby scheduled the delivery of the metal building for Friday, April 27, 2012 and demanded cash on delivery ("COD") payment from Gator for the balance of the building cost. ECF No. 52 at 3-4. On April 27, several significant transactions occurred. First, Kirby's shipper, Huff & Puff Trucking, Inc. ("Huff & Puff") delivered the building to Hunter Army Airfield. *Id.* at 4. Then, Mack gave a check directly to Gator in the amount of $47,202.78, the outstanding balance due to Kirby on the building. *Id.* Importantly, upon delivery of the building, Huff & Puff's driver did not collect payment as directed by the bill of lading. *Id.*

On Monday, April 30, Gator did not return to the job site to erect the building. *Id.* And, not surprisingly considering this omission, Gator never paid Kirby. *Id.* at 4-6.

Also on April 30, Doug Hicks of Mack called Robert Hodges of Kirby to inquire as to whether Gator paid Kirby. ECF No. 46-8 at 12. According to Hicks, Hodges replied that since the building "was a COD delivery

---

[1] The Court quotes some language directly from ECF No. 19.

and the building was dropped on-site that [Kirby] probably got paid." *Id.* Also according to Hicks, Hodges did not answer definitively. *Id.*

Kirby now brings this action for breach of contract against Gator seeking payment for the building, interest, and attorney's fees. ECF No. 1 at 7-8. Additionally, Kirby brings this action against Mack and American because simultaneous to entering the construction contract with the United States, Mack and American jointly issued a payment bond "for the protection of subcontractors and material suppliers" on the project. ECF Nos. 1 at 6-7; 14-1 at 2. Mack and American assert the defense of equitable estoppel against Kirby for collection against the bond. ECF No. 52 at 8-14.

The Court proceeds by analyzing the summary judgment standard, the prima facie case on the bond, the affirmative defense of estoppel, interest on the unpaid account, attorney's fees, and the default judgment previously entered against Gator. Ultimately, because the parties do not dispute the facts, the bulk of this case hinges on whether Mack and American can establish a viable estoppel defense.

### III. ANALYSIS

#### A. Summary Judgment Standard

Courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008). Courts, moreover, may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

#### B. Prima Facie Breach of Contract

Mack and American concede that Gator failed to pay Kirby. ECF 52 at 8. Therefore, the Court considers Kirby's legal right to recover against the Miller Act bond. The Miller Act requires that all general contractors entering into federal government contracts in excess of $100,000 must provide performance and payment bonds for protection of the Government and subcontractors, respectively. 40 U.S.C. § 3131(b). A subcontractor includes "all persons supplying labor and material in carrying out the work provided for in the contract." § 3131(b)(2).

Mack and American also concede that if nonpayment were the only consideration under the Miller Act, Kirby could recover against the Bond. ECF No. 52 at 8. But, the Defendants argue that protection is not absolute and the doctrine of equitable estoppel applies. *Id.* Kirby argues that given the undisputed facts, its actions have done nothing to warrant application of the equitable estoppel doctrine.

#### C. Affirmative Defense of Estoppel

The doctrine of equitable estoppel, most generally, "precludes a litigant from asserting a claim or defense that might otherwise be available to him against another party who has detrimentally altered his position in reliance on the former's

misrepresentation or failure to disclose some material fact." *United States ex rel. Krupp Steel Prods., Inc. v. Aetna Ins. Co.*, 923 F.2d 1521, 1526 (11th Cir. 1991) (quoting *FDIC v. Harrison*, 735 F.2d 408, 410 (11th Cir. 1984)). Equitable estoppel is a defense under the Miller Act in proper factual circumstances. *Id.* The Court must choose which definition of estoppel to adopt, as the law varies in state and federal precedent.

In *Krupp Steel Products*, the Eleventh Circuit required the presence of three elements to establish estoppel: "(1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things; (2) wilfulness or negligence with regard to the acts, conduct or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated." *Id.* However, the Circuit derived this definition from Alabama and Florida precedent. *See id.* (citing *Harrison*, 735 F.2d at 413 (Alabama); *In re Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982) (Florida)). Defendants employ this definition of estoppel in their briefs. ECF No. 52 at 11-12.

This Court, Judge William T. Moore, stated that "in a Miller Act case involving issues that do not require construction of the statute, such as ordinary contract issues, state law should apply." *United States ex rel. Duncan Pipeline, Inc. v. Walbridge Aldinger Co.*, No. CV411-092, 2013 WL 1338392, at *10 (S.D. Ga. Mar. 29, 2013) (citing *United States ex rel. U.S. Steel Corp v. Constr. Aggregates Corp.*, 559 F. Supp. 414, 424 (E.D. Mich. 1983), *rev'd in part on other grounds*, 738 F.2d 440 (6th Cir. 1984)). Applying this rule and reasoning, Georgia common law would apply, and Kirby counsels such course. ECF No. 54 at 3. To prove equitable estoppel in Georgia courts, a defendant must show

> first, a false representation or concealment of facts; second, it must be within the knowledge of the party making the one or concealing the other; third, the person affected thereby must be ignorant of the truth; fourth, the person seeking to influence the conduct of the other must act intentionally for that purpose; and, fifth, persons complaining shall have been induced to act by reason of such conduct of the other.

*Hunnicutt v. S. Farm Bureau Ins. Co.*, 351 S.E.2d 638, 641 (Ga. 1987).

The Court follows its recent precedent and will apply the Georgia law. The pre-split Fifth Circuit further validated this state-law approach in following Florida law on equitable estoppel in a contract matter originating from the Southern District of Florida.[2] *Minerals & Chems. Philipp Corp. v. Milwhite Co.*, 414 F.2d 428, 430 (5th Cir. 1969) (citing Florida District Court of Appeal). Indeed, a trace of citations back to this case reveals it to be the origin of the Eleventh Circuit's three-element definition of estoppel.

Having settled the choice-of-law issue, the Court turns to applying the facts to Georgia's five-element definition of

---

[2] The Eleventh Circuit adopted Fifth Circuit precedent prior to October 1, 1981 as binding. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

estoppel. As an affirmative defense, Defendants bear the burden of production. *Am. Associated Cos. v. Vaughan*, 97 S.E.2d 144, 147 (Ga. 1957).

Mack and American argue that the COD payment structure and actual delivery of the building without collection, alone, is a sufficient act to support the estoppel defense. ECF No. 52 at 10. The Defendants also argue that the statements by Kirby's representative, Roger Hodges, about Kirby's probable receipt of payment support an estoppel defense. *Id.*

First, the COD payment structure or the statement made by Kirby's representative about probable receipt of payment must constitute a false representation or concealment of fact. *Hunnicutt*, 351 S.E.2d at 641. The COD transaction structure itself is not any sort of assertion, but rather a course of conduct, which is insufficient under Georgia law. *Compare Krupp Steel Prods.*, 923 F.2d at 1526 ("words, acts, conduct or acquiescence" may establish estoppel under the federal precedent), *with Hunnicutt*, 351 S.E.2d at 641 ("a false representation or concealment of facts" is necessary to establish estoppel under Georgia law). Likewise, failing to collect the payment upon delivery of the building neither portrayed or concealed any fact; rather, it is an act, or an omission thereof. And even if failure to collect payment at time of the delivery somehow constituted a false representation or concealment of fact, Huff & Puff committed the omission, not Kirby.[3]

---

[3] Mack and American have filed a third-party complaint against Huff &Puff. ECF No. 30.

The comment by Kirby's representative that "they probably got paid" narrowly passes as a potentially false representation. ECF No. 51-4 at 42. On one hand, Mr. Hodges, Kirby's representative, expressed doubt as to actually having been paid, both explicitly, when he said he was not sure, and implicitly, when he qualified the probability that Gator had paid. *Id.* at 42-43. Mack's representative, Mr. Hicks, took the statement to mean that Gator had paid Kirby, and a jury could find in Mack's favor on this point. *Id.* at 45. But that possible mistake alone does not satisfy Georgia's estoppel test.

In order to create a jury question on estoppel, Defendants must present evidence that Kirby's representative made the statement regarding payment "intentionally" for the purpose of influencing Mack's conduct. *Hunnicutt*, 351 S.E.2d at 641. Defendants have presented evidence to the contrary, noting that Hodges expressed doubt as to whether payment had been received. ECF No. 51-4 at 42-43. Hodges also never purported personal knowledge or made a statement of definiteness, which would be probative of intent to influence action. *Id.* at 43. A reasonable recipient of doubtful information would proceed cautiously, and Hodges's conveyance of such personal doubt demonstrates an opposite of the intent to induce action. The Defendants have failed to show that Kirby acted with intent.

A broader principle of equitable estoppel counsels the Court's decision. Estoppel arises under circumstances "productive of evil." *Smith v. Direct Media Corp.*, 544 S.E.2d 762, 764 (Ga. Ct. App. 2001). The

4

relationship between Mack and Kirby seems to be far from deceptive or dark. When Gator failed to show to erect the building, Mr. Hicks (Mack) called Mr. Hodges (Kirby) to seek recommendations for a replacement for Gator. ECF No. 51-4 at 38-39. Hodges offered suggestions, although Mack did not use any that came from him. *Id.* at 39. The parties here both made constructive efforts to complete the Hunter project.

And finally, the clear wrongdoer in this project is the absentee litigant, Gator. Either Mack or Kirby must shoulder the loss of Gator's misappropriation of payment. Given the Miller Act's "highly remedial" nature and the "liberal . . . application in order [to] properly . . . protect those whose . . . materials go into public projects," the burden in this case properly falls to the insured, the Defendants. *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957).

The Court concludes that Defendants present insufficient evidence to support the affirmative defense of equitable estoppel, and the Court grants summary judgment to Kirby in the amount of $47,202.78. The Court now turns to Kirby's claim for interest and attorney's fees under its contract with Gator.

### D. Prejudgment Interest

Kirby seeks interest at the rate of one and one-half percent per month on the unpaid balance pursuant to its contract with Gator. ECF No. 1 at 8. Courts have consistently permitted recovery of interest on unpaid accounts under the Miller Act. *United States ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 86 F.3d 332, 336 (4th Cir. 1996) (citing, *e.g.*, *United States ex rel. Se. Mun. Supply Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 876 F.2d 92, 93 (11th Cir. 1989)).

As of November 27, 2013, the accrued interest on the unpaid balance equals $13,452.76 with interest continuing to accrue at $708.04 per month. ECF No. 46-1 at 5-6. The Court adds three months of accruing interest—December through February—and awards a total of $15,576.88.

### E. Attorney's Fees

Kirby also seeks at least $31,213.63 in attorney's fees incurred in this case. ECF Nos. 1 at 6; 46-1 at 4-5. The contract between Kirby and Gator provided that Gator "will pay all [Kirby]'s costs collecting or securing any indebtedness due hereunder, including . . . reasonable attorney's fees and litigation expenses." ECF No. 46-5 at 12. Although no contractual privity exists between Kirby and Mack, the Eleventh Circuit held that attorney's fees due from a subcontractor/sub-subcontractor relationship are collectable from the general contractor under the Miller Act. *Se. Mun. Supply Co.*, 876 F.2d at 93.

Mack and American do not dispute that attorney's fees may be recovered here, but rather dispute that the $31,213.63 is a reasonable sum, given that it equals about three fourths of principal amount due under the contract. "A determination of a reasonable attorney's fees is a question of fact," *Crowe & Dunlevy v. Century Martial Art Supply, Inc.*, No. 805CV1843, 2006 WL 20509, at *1 (M.D. Fla. Jan. 4, 2006), and because the parties objectively disagree on

reasonableness, Defendants have identified a limited material dispute to reach the jury. The Court denies summary judgment as to the amount of reasonable attorney's fees.

### E. Default Judgment Against Gator

The Court previously entered a default judgment against Gator in the amount of $62,065.26. ECF No. 21; *see also* ECF No. 19 at 3. This judgment included damages for the unpaid amount of the building, attorney's fees, and interest. *Id.* The Court now *sua sponte* vacates the entry of default judgment against Gator and orders the Clerk to enter a new judgment against all Defendants in the amount of $62,779.66.[4] The Court must take this step to prevent a double recovery by Kirby. *See Marvin Nix Dev. Co. v. United Cmty. Bank*, 692 S.E.2d 23, 25 (Ga. Ct. App. 2010) (holding that a creditor may not take double recovery on a breach of contract claim).

The Court recognizes that the new sum of $62,779.66 does not include any attorney's fees, yet the previous default judgment of $62,065.26 imposed attorney's fees against Gator. The Court will enter proper judgments against the respective Defendants when the factfinder resolves the amount of attorney's fees. *See Atlanta Gas Light Co. v. Semaphore Adver., Inc.*, 747 F. Supp. 715, 719 (S.D. Ga. 1990) (citing *Frow v. DeLaVega*, 82 U.S. (15 Wall.) 552, 554 (1872)) (holding that default judgment must be delayed until a court adjudicates case against all jointly and severally liable defendants).

The Clerk shall also enter default against Gator pursuant to Federal Rule of Civil Procedure 55(a). Even though Gator's final liability is uncertain, the company has "failed to plead or otherwise defend" this action. *Id.* By Gator's default, the Court considers Kirby's allegations admitted. *Nishimatsu Const. Co. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

### IV. CONCLUSION

The Court concludes that Defendants have failed to present evidence to support an affirmative equitable estoppel defense, so the Court **GRANTS** summary judgment to Kirby on the matter of the unpaid sum for the metal building. The Court also **GRANTS** Kirby summary judgment as to interest, but **DENIES** summary judgment as to attorney's fees and leaves the reasonableness determination to the fact finder.

The Court orders the Clerk to **VACATE** the default judgment against Gator, ECF No. 21, and enter a judgment totaling $62,779.66 against all Defendants in the case. Finally, the Court **ORDERS** the Clerk to enter a default against Gator pursuant to Federal Rule of Civil Procedure 55(a).

The parties have fourteen days from the date of this order to take further action.

This 3 day of March 2014.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[4] $47,202.78 unpaid balance on building + $15,576.88 interest = $62,779.66